CAUSE NO.  202014501

RECEIPT NO.  880726            75.00     CTM
*********            TR # 73734147

---

PLAINTIFF: STEADFAST FUNDING LLC
vs.
DEFENDANT: WFG NATIONAL TITLE INSURANCE COMPANY

In The   157th
Judicial District Court
of Harris County, Texas '
157TH DISTRICT COURT
Houston, TX

---

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: WFG NATIONAL TITLE INSURANCE COMPANY (FOREIGN CORPORATION) MAY BE
    SERVED BY SERVING ITS REGISTERED AGENT CT CORPORATION SYSTEM

    1999  BRYAN STREET SUITE 900   DALLAS TX 75201

    Attached is a copy of PLAINTIFFS ORIGINAL PETITION AND APPLICATION FOR TEMPORARY
    RESTRAINING ORDER TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

This instrument was filed on the 3rd day of March, 2020, in the above cited cause number
and court. The instrument attached describes the claim against you.

      YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you.

TO OFFICER SERVING:

      This citation was issued on 12th day of March, 2020, under my hand and
seal of said Court.

Issued at request of:
RAMEY, CHRISTOPHER B.
1602  HAMBLEN ST.
HOUSTON, TX  77009
Tel: (713) 974-1333
Bar No.: 791480



MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: MOMON, RHONDA  HWP//11460564

---

CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy of this citation together with an attached copy of
PLAINTIFFS ORIGINAL PETITION AND APPLICATION FOR TEMPORARY
to the following addressee at address:

_____          _____
                                           ADDRESS

_____          Service was executed in accordance with Rule 106
(a)ADDRESSEE                                   (2) TRCP, upon the Defendant as evidenced by the
                                               return receipt incorporated herein and attached
_____              hereto at

                                           _____
                                           on _____ day of _____, _____
                                           by U.S. Postal delivery to _____
                                           _____

                                           This citation was not executed for the following
                                           reason: _____
                                           _____

                                           MARILYN BURGESS, District Clerk
                                           Harris County, TEXAS

                                           By _____, Deputy

N.INT.CITM.P                    *73734147*

**Exhibit A-010**

3/3/2020 7:17 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 41354233
By: Nelson Cuero
Filed: 3/3/2020 7:17 PM

# 2020-14501 / Court: 157

CAUSE NO. _____

| | | |
|---|---|---|
| STEADFAST FUNDING, LLC, et al. | § § | IN THE DISTRICT COURT OF |
| Plaintiffs | § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| WFG National Land Title Company, Defendant. | § § § | ___   JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY, AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Steadfast Funding, LLC, Marc Sherrin (the "Steadfast Parties"), Initram, Inc., Bruce L. Robinson, Patrick Grosse, Trustee of the Grosse Family Trust dated 12/31/2004, Morgan Marketing & Management, Inc., and Jyoti B. Ramsey ("Steadfast or Lender Parties or Insureds"), hereafter collectively called Plaintiffs, and in support of their causes of action shows unto the Court the following:

## I.
## DISCOVERY LEVEL AND T.R.C.P. 47 DISCLOSURES

1.     Discovery is intended to be conducted under Level 2 pursuant to Rule 190 of the Texas Rules of Civil Procedure.  Plaintiffs seek recovery of monetary damages in an amount over $200,000 but not more than $1,000,000 at this time, however, damages continue to accrue rapidly.

## II.
## PARTIES AND SERVICE

**A.     Plaintiffs:**

1.     Steadfast Funding, LLC is a Texas Limited Liability Company.

2.     Initram, Inc. d/b/a Promethean Ventures

3.     Bruce L. Robinson

-1-

Exhibit A-011

    4.     Morgan Marketing & Management, Inc.

    5.     Jyoti B. Ramsey

    6.     Patrick Grosse, trustee of the Grosse Family Trust

    7.     Marc Sherrin

**B.**    **Defendants:**

    1.     Defendant WFG National Title Insurance Company is a foreign corporation with a registered agent listed as CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**III.**
**JURISDICTION AND VENUE**

The subject matter in controversy is within the jurisdictional limits of this Court and this Court has personal jurisdiction over the parties named herein. Venue is proper in Harris County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code as all or a substantial portion of the events giving rise to the claims occurred in Harris County, Texas and the real property subject to this Application and Petition is located in Harris County, Texas.

**IV.**
**STATEMENT OF FACTS**

On or about January 29, 2016, Plaintiffs loaned money to develop the Property (described below), secured by a Deed of Trust.   Defendant issued a policy of title insurance covering the Property in favor of Plaintiffs. *See* Exhibit 1, the "Policy."

Defendant failed to note, disclose, and exclude or except a superior and pre-existing George Lee Deed of Trust, covering the Property, properly recorded prior to Steadfast's First Lien Deed of Trust and note.   Plaintiffs made their loan in reliance on the absence of such superior liens as reflected in the Title Policy, Commitment and Schedules, and in reliance on the Carrier's duty to promptly cover any defects and pay any such claims.

-2-

**Exhibit A-012**

On or about March 7, 2017, George Lee foreclosed on the Property, asserting his prior lien which Defendant failed to disclose, resulting in a total failure of title and a covered loss by Plaintiffs.

On or about April 7, 2017, Plaintiffs made "Demand for Immediate Payment of Claim within Amount Insured, Escrow and File No. 1600478-11, Policy No. T2-176-A38-02113022, Insured: Steadfast Funding, LLC Re: Claim for Lots Three (3) and Four (4), Block Two (2) of FISHER ESTATES AT OAK FOREST, Affected Addresses: 2111 Oatfield, Houston, Texas 77018 (Tract Three); and 2113 Oatfield, Houston, Texas 77018 (Tract Four)." *See* <u>Exhibit 2</u>. At that time, Plaintiffs' damages exceeded SEVEN HUNDRED EIGHTY ONE THOUSAND, EIGHT HUNDRED AND NINETY FOUR DOLLARS ($781,894.00), in addition to interest accruing in addition to that figure in the amount of $250.00 per day, together with attorney's fees (the "Amount of the Claim") and potentially other damages going forward. Notice of claim was promptly and properly delivered. None of the exclusions to coverage apply and no reservation of rights has been tendered, nor would any be appropriate. Plaintiffs properly complied with all of their obligations.

Rather than pay the claim as requested, Defendant declined to do so, and instead instituted baseless litigation against the foreclosing Party whose prior lien Defendant missed, George Lee. That litigation has been ongoing since May of 2017, Cause No. 2017-29836-7 in the 133rd District Court. Defendant failed to prosecute this action with reasonable diligence, or to do so with the intent of preventing or reducing loss to Plaintiffs. Since losing its summary judgment motions in September of 2018, Defendant failed to take any steps whatsoever to prosecute the litigation, failed to take any appropriate action, allowed unopposed continuances, and caused additional unreasonable delay, and minimize its costs, while creating damages to

-3-

Exhibit A-013

Plaintiffs and reduction in value of the Property. The Property has dilapidated and was rented to a third party without knowledge or consent of Plaintiffs. Defendant failed to take any steps to properly establish title, or to prevent or reduce loss or damage to the insured.

Defendant knew full well that only Plaintiffs had any claim to title, as the Notice of Claim, as well as the Petition they wrongfully caused to be filed, back in 2017, clearly listed only Plaintiffs as parties with a claim to title. *See* Exhibit 2 and the petition (style and introduction, and at paragraph 8), Exhibit 3.

On or about October 29, 2019, Plaintiffs gave notice of claim and made demand for payment of the claim in accord with TEX. INS. CODE §§ 541.060, 541.061, 541.052, 541.154, 541.151, 542.058 and 542A.003 et seq., as well as Texas Business & Commerce Code § 17.46 et seq. *See* Exhibit 4. Defendant failed to make any tender sufficient to make the Plaintiffs whole or to otherwise satisfy the requirements of § 541.156. As a consequence, the Defendant left the Plaintiffs with no option other than to bring this suit. All prerequisites to filing suit have been met.

Upon demand and bad faith notice by Plaintiffs, rather than pay the claim as demanded and required, and having sat on the case for years, not paying appropriate fees or defense costs, and allowing the Property to dilapidate, Defendant instead secretly paid Lee $400,000 for the properties and dumped the title on Plaintiffs, illegally putting Plaintiffs and other grantees into the chain of title, and wrongfully asserting that this was its only obligation, that Plaintiffs had no say in the matter.

Defendant again wrongfully declined to pay the claim, and instead secretly commenced settlement negotiations with Lee, eventually disclosing some potential terms to Plaintiffs. In December and January of 2019 – 2020, Plaintiffs became aware that Defendant intended to

-4-

simply pay the record title owner, settle the suit, and turn over title to the Property, which Defendant's misconduct caused to sit unattended and tied up in litigation for three years.

In order to evaluate whether to mitigate their damages caused by Defendant, by accepting title to the Property, and to evaluate whether accepting such settlement constituted a reasonable effort to satisfy their duties under the Policy, Plaintiffs reasonably requested relevant information from Defendant.   Plaintiffs requested the following information on multiple occasions from November of 2019 through the present:  confirmation that the lis pendens on the Property has not been released and the lawsuit has not been dismissed, and will not be without Plaintiffs' written consent; a copy of the purported settlement agreement, which Plaintiffs did not authorize, and all communications related thereto; the entire litigation file, carrier file and communications relating to the insured, all communications with Lee, and all files on the Property;  any insurance policies on or covering the Property, and the status thereof;  information on the tax status and other obligations associated with the property;  a title commitment, so that a sale of the Property by Plaintiffs might be possible.

Plaintiffs expected to receive all of that information, among other things, in order to evaluate whether it was appropriate to accept the settlement and title to the property in mitigation of their damages, and in satisfaction of any obligations under the policy.  Plaintiffs reasonably relied on Defendant's representations that it would provide such information, and not execute or record any conveyances or otherwise endanger the Property, the suit, or Plaintiffs.   Plaintiffs specifically objected to such proposed settlement, specifically demanded that no settlement be executed or deed conveyed without their prior written consent, and specifically ordered Defendant to avoid recording any instruments until they had an opportunity to review said relevant information and consider their options.

-5-

Rather than provide this information which Plaintiffs reasonably and timely requested, Defendant allegedly secretly and wrongfully executed a settlement agreement in Plaintiffs' name with the title owner, and secretly caused them to execute a deed into numerous Parties, including Plaintiffs, on January 20, 2020. *See* Exhibit 5 (the "Wrongful Deed"). The Wrongful Deed Defendant caused to be executed and recorded clouded Plaintiffs' title by wrongfully conveying a 40% undivided interest in the Property to Richard Meter, as Trustee, Vincent Investments, Mark Uhlig, Elm 401k PSP, Laurel and Edwin Mead, Trustees. *Id.* Despite being notified that the Wrongful Deed was void as to one Plaintiff, the Grosse Family Trust, for lack of a grantee, resulting in failure of another 10% undivided interest, and was a cloud on title to other Plaintiffs, and that the Wrongful Deed would constitute tortious interference with the Plaintiffs and other Parties Loan Servicing and other agreements, Defendant secretly and intentionally recorded the Wrongful Deed on February 18, 2020. Plaintiffs learned of such wrongful recordation on February 20, 2020.

All relevant and necessary information having been deliberately withheld by Defendant, Plaintiffs have not yet even been able to make any reasonable determination as to whether to accept title, and yet Defendant secretly and fraudulently put them in harm's way with a defective and wrongfully recorded deed.

As Defendant has known since 2017, was specifically informed again in December, and again in January, the Wrongful Deed is defective, the grantees are incorrect, Defendant knowingly induced the Grantor to convey the property to the wrong grantees, clouding title and interfering with Plaintiffs' agreements.

Defendant was aware that Plaintiffs and the other wrongful grantees operate under a loan servicing agreement. Plaintiffs specifically informed Defendant in writing that certain grantees

-6-

Exhibit A-016

in the Wrongful Deed had no interest, in 2017, and again numerous times in 2019 and 2020 prior to the execution and recordation of the Wrongful Deed, and that such recordation would cause tremendous problems for Plaintiffs.  Defendant secretly, knowingly, and fraudulently had the Wrongful Deed executed and recorded anyway, solely in order to avoid its obligations.   The Wrongful Deed is a cloud on Plaintiffs' title, assuming that Plaintiffs even accept title in mitigation of damages, once the information Defendant has continued to fraudulently conceal is disclosed.

Defendant has wrongfully forced Plaintiffs into liability under a chain of title as unwilling and unknowing tenants in common, with unlimited risk and no insurance or other information upon which to even evaluate their risk.  Defendants has failed to provide information and failed to issue a title commitment in the amount of the loan ($819,000.00 to date) as required by Section 3 of the Policy, so that Plaintiffs could not even evaluate, inspect, or market the Property, if they decide to mitigate damages by accepting title.

Defendant cannot just secretly settle a misguided lawsuit it wrongfully commenced against Plaintiffs' demands, secretly execute a deed into Plaintiffs as unwilling grantees, with other tenants in common who are not even entitled to any interest, create a cloud on their title, and put them in the chain of title to a property which has sat unattended in litigation for years due to Defendant's failures to act reasonably or promptly or in accord with Texas law or the policy.   This is especially true when Defendant has fraudulently concealed or withheld almost all relevant information about the suit, claim, settlement and the Property.  Plaintiffs have not even had opportunity to inspect or insure the property, or consent to or interact with tenants who apparently are renting the Property.  Plaintiffs don't even have keys, and cannot even inspect the

Exhibit A-017

property.  Plaintiffs still lack a title commitment, insurance information, tax information, details of the settlement or suit, or anything else they reasonably requested.

Defendants certainly can't secretly record a defective deed into grantees who have specifically declined to accept the deed yet, and specifically instructed Defendant to not record the deed.  This is especially true when unknown liabilities associated with the Property likely abound.   This is probably a criminal act, certainly a tortious interference with the Plaintiffs' Loan Servicing Agreements, and certainly a bad faith insurance settlement practice.   This outlandish sequence of events and wrongful conduct lies far outside the scope of the policy, and of course a breach of the policy terms themselves.  Defendant has interfered with Plaintiffs and put Plaintiff Steadfast in an extremely difficult position, essentially pitting some of its clients' interests against others without any of their knowledge or consent, which will likely cost Steadfast client relationships, and potentially millions in income.  Plaintiffs have suffered mental anguish, loss of income, damage to credit, and other damages as a result of Defendant's long pattern of malfeasance.

Plaintiffs have met all of their obligations under the Policy.  Failing to allow this kind of outrageous misconduct, or to accept such risks without being provided any information raises no issues of "reasonable aid" in settlement.  Defendants never even requested that Plaintiffs accept the terms of the purported settlement with Lee.   The Actions of Defendant is not "lawful acts." What Defendant has done is not "establishing title"; it is further clouding it.  Defendant's failure to provide the reasonably requested information is just further "unreasonable delay" and tortious as set forth below.   Defendant's actions are not "reducing or preventing loss or damage" of Plaintiffs.  These are not "appropriate actions."  Defendant's conduct is grossly negligent at best, and rises to the level of fraud.   The recording of that Wrongful Deed under these circumstances

-8-

Exhibit A-018

constitutes common law fraud, as well as statutory fraud, as Plaintiffs relied on Defendant's representations.

The Property is not worth anywhere near the indebtedness under the Policy, or the damages incurred by Plaintiffs. Plaintiffs have incurred $13,430.00 in reasonable and necessary attorney's fees to date.  Total actual damages are yet to be determined, but exceed $819,000.00 to date.  Plaintiffs have suffered independent injury, lost profits and income, damages to credit and reputation, mental anguish damages, and exemplary damages.

Defendant knew that it was insuring Plaintiffs' 18% interest construction loan secured by real property.  Defendant just flat out missed the prior Lee lien, and after Plaintiffs' title failed and their lien was wiped out due to Defendant's negligence, instead of preventing loss or damage to Plaintiffs in good faith as required, Defendant instead chose to minimize its own losses at Plaintiffs' expense.  Defendant knew Plaintiffs' losses were rapidly increasing, and the value of the Property was rapidly decreasing the entire time.  Defendant deliberately dragged out the case for as long as possible, and handled the case as cheaply as possible, at Plaintiffs' expense. Defendant deliberately dilapidated the value of the Property over three years, until Plaintiffs threatened suit for their bad faith.  Then, when free delay was no longer an option for Defendant, Defendant secretly implemented its bad faith plan to just buy the now dilapidated Property as cheaply as possible, dump the title on Plaintiffs, and try to avoid honoring its obligations to Plaintiffs and preventing or reducing Plaintiffs' losses.

**V.**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTION**

Plaintiffs adopt by reference and incorporate herein all factual allegations above. Plaintiffs seek either an extension of a Temporary Restraining Order ("TRO") in this action,

Exhibit A-019

pursuant to TEX. R. CIV. P. 680-682, Texas Civil Practice & Remedies Code §§ 65.011(1) and (5), or more preferably a temporary or permanent injunction.

The injunctive relief requested is further specifically authorized by Texas Civil Practice & Remedies Code Chapters 123, 134A, and 143. To warrant a TRO and temporary injunction, Plaintiffs need only show a probable right to permanent relief and a probably injury while the action is pending unless the injunction is issued. *See Rugen v. Interactive Business Systems*, 864 S.W.2d 548, 551 (Tex. App. – Dallas 1993, no writ) (*citing Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)). The facts outlined in the preceding paragraphs, as well as in the Affidavit of Marc Sherrin, attached hereto and incorporated herein as <u>Exhibit 6</u> will show that the Plaintiffs will suffer immediate and irreparable harm if the TRO is not issued.

Texas courts may grant a temporary restraining order "*ex parte*," or without notice to the adverse party, if it clearly appears from specific facts shown by affidavit or in the verified petition that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing can be held on the application. TEX. R. CIV. P. 680; *In re Spiritas Ranch Enterprises, L.L.P.*, 218 S.W.3d 887 (Tex. App.—Fort Worth 2007).

Plaintiffs request that this Court immediately enter a TRO and Temporary and Permanent Injunction enjoining Defendant, all entities subject to its control or right of control, and those with actual notice of the Order from:

1.  Releasing any Lawsuit or Lis Pendens related to the Property.

2.  Entering into or participating in any way with any further conveyance, encumbrance, or other legal transaction associated with the Property, or recording any further documents related to the Property without Plaintiffs' prior written consent.

3.  Taking any physical action with respect to the Property without Plaintiffs' prior written consent.

-10-

Exhibit A-020

4.     representing to any entity that they have any ownership, right of control, or control over the Property or to act on behalf of Plaintiffs;

Further, that Defendant herein shall immediately, within 48 hours of the date of this Order:

5.     Produce to the Plaintiffs by and through their counsel of record all information in any format, including but not limited to documents, communications, texts, emails, voicemails, or other communications, drafts, final documents, and the entire final Closing file, Claim file, Litigation file, and Property file, however actually named, arising from, related to, evidencing , or associated with the Property, the Underlying Case or Claim, the Policy, the Closing, any foreclosure, or any settlement.  If any documents are withheld on the basis of privilege, then Defendant shall prepare and produce a Privilege Log in accord with the Texas Rules of Civil Procedure, 193.3 et seq., within ten (10) days of this Order.  Further, such production shall include all information related in any way to the Property, or any transaction, loan, or interest related to such Property, including any payment related in any way to the litigation associated with such Property, to the Property itself, or to any transaction related in any way to the Property.

6.     Plaintiffs herein and their authorized agents shall be entitled to full access and Defendant shall deliver to them keys to the Property, and any and all information related to the Property, including but not limited to: 1) the purported settlement agreement, which Plaintiffs did not authorize, and all communications related thereto; 2) the entire litigation file, carrier file and communications relating to the insured, all communications with Lee, and all files on the property; 3) any insurance policies on or covering the Property, and all information regarding the status thereof; 4) all information relating to the status of any tax other obligations associated with the Property; 5)  a title commitment covering the Property.

7.     Pay any taxes or other obligations that may be past due.

-11-

Exhibit A-021

8.      Forward any rents or other correspondence related to the properties to Plaintiffs via the office of the undersigned.

9.      Prepare a new deed for approval by Plaintiffs, and prepare, execute, acknowledge, and deliver to Plaintiffs via the undersigned a recordable affidavit to the effect that the first Wrongful Deed was executed and recorded in error, that no grantee consented to its execution or recordation, or was aware of its execution or recordation, and reflecting that the Wrongful Deed is void.  The new deed should expressly also reference the prior deed and the fact that it was void and never accepted by any grantee.

10.     Any additional relief this Court deems equitable and just.

        WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray the court that a Temporary Restraining Order issue immediately, enjoining Defendant as set forth above, and for such other and further relief to which Plaintiffs may show themselves to be justly entitled.

### CLAIM ONE - FRAUD, STATUTORY FRAUD, REAL ESTATE FRAUD, AND FRAUD IN THE INDUCEMENT

        Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs.

        Pleading additionally, or in the alternative, Defendant made false representations and promises made without intention to perform, to Plaintiffs; which Plaintiffs relied upon to their detriment. Plaintiffs suffered harm as a result of the false representations and promises made to them.   The Defendants violated § 27.01, TEX. BUS. & COMM. CODE, in numerous ways, committing fraud involving real estate.

### CLAIM TWO - BREACH OF CONTRACT

        Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs.  Defendant breached the terms of its Policy, as well as its agreements with Plaintiffs

Exhibit A-022

regarding potential settlement and provision of information.

Pleading additionally, or in the alternative Defendant further owes all Plaintiffs their attorney's fees for breach of contract, declaratory judgment, and other remedies including but not limited to under Chapters 37 and 38 of the Texas Civil Practice & Remedies Code.

Defendant insured Plaintiffs against loss or damage sustained or incurred by the Insured by any defect in title or lien or encumbrance on the Title. It is undisputed that the Lee lien and ultimate foreclosure was an insured defect and ultimately insured total failure of title. Defendant owes Plaintiffs the Indebtedness under the Policy, which includes but is not limited to: (i) principal disbursed; (iv) interest on the loan; (vi) expenses of foreclosure and any other costs of enforcement; (vii) amounts advanced to assure compliance with laws or to protect the lien...; (viii) amounts to pay taxes and insurance; and, (ix) reasonable amounts expended to prevent deterioration of improvements.   This amount is in excess of $832,000.00.   The extent of Defendant's contractual liability is not less than this Indebtedness.

Defendant failed to, at its own cost and without unreasonable delay, provide for the defense of Plaintiffs and their title. Defendant failed to diligently institute and prosecute any action or proceeding or to do any other act, and failed to take reasonable actions that in its opinion may have be necessary or desirable to establish the Title or the lien of the Insured Mortgage. Defendant failed to prevent or reduce loss or damage to the Insured, and its actions were not calculated to do so; rather, its actions were solely calculated to minimize the costs of Defendant without regard to the loss, damages, or rights of Plaintiffs.   Defendant's actions in handling the claim and suit were not "appropriate action" under the terms of the Policy.   The actions of Defendant were not lawful and not reasonably necessary or desirable to establish title and the other obligations to Plaintiffs. Defendant failed to undertake these elections and actions,

-13-

Exhibit A-023

or to institute or prosecute the actions and proceedings related to the Policy diligently or reasonably diligently.

Defendant wrongfully misrepresented to Plaintiffs, and denied coverage and failed to pay Plaintiffs, falsely asserting that its only obligation was to settle with third parties claiming title under Section 7(b)(i) of the Policy, which it falsely alleges terminates its other obligations of payment and coverage.   This wrongful denial and failure to pay, false statement of law, and misrepresentation of the Policy ignores multiple facts, including that: 1) Defendant's execution of this strategy to Plaintiffs' detriment was not done diligently or in good faith, which is a prerequisite under the Policy as set forth in numerous provisions, including but not limited to Section 9(a);  2) even if Defendant had acted reasonably diligently and in good faith to prevent or reduce loss or damage to Plaintiffs, Defendant's obligation under Section 7 expressly continues, requiring Defendant to nonetheless make the payments required to be made, which "payments required to be made" include the requirement to pay the actual monetary loss or damage,  under Section 8, up to at least the amount of the Indebtedness ($832,000.00 to date and counting) or the limits ($1,000,000.00), which coverage and payment has been wrongfully denied by Defendant.   Further, Defendant failed and denied to also pay those costs, attorneys' fees and expenses incurred in accordance with Sections 5 and 7 of these Conditions per Section 8 and costs, attorneys' fees and expenses incurred by the Plaintiffs that were authorized by the Company up to the time of payment and that the Company is obligated to pay under Section 7(b)(i), which includes all costs of investigation, claims handling, property valuation and attorneys' fees incurred by Plaintiffs.   Further, given the losses and dilapidation caused by Defendant's acts, Defendant, even if Plaintiffs accept title in mitigation of damages and cooperation under the Policy, after reasonable disclosure of information, the Defendant has not

Exhibit A-024

established title "as insured under Section 9(a), and did not conduct itself with reasonable diligence, and as such, remains liable for all of Plaintiffs' damages.

### CLAIM THREE - BREACH OF FIDCUIARY DUTY, BAD FAITH, INSURANCE CODE, DECEPTIVE TRADE PRACTICES

Defendant is engaged in the insurance business as that term is used in § 541.002(2) of the Texas Insurance Code. Defendant is therefore considered a "person" for purposes of liability under Chapter 541 of the Texas Insurance Code. Defendant has breached its duties of good faith and fair dealing, obligations to promptly investigate and pay the claim, to make a determination of liability within a reasonable time, and to diligently institute and prosecute proceedings to clear the defect without unreasonable delay. Defendant has breached its statutory duties by not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear.  The acts and/or omissions of Defendant violate § 17.46 of the Deceptive Trade Practices Act.  The Defendant engaged in an unconscionable action or course of action, taking advantage of the Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree.  Defendant engaged in unfair and deceptive acts proscribed by §§ 541.001 et seq. of the Texas Insurance Code. Each of the acts and/or omissions of Defendant, singularly and/or cumulatively, were a producing and/or proximate cause of Plaintiffs' damages as set out below.

Defendant failed to exercise the ordinary care that a reasonable insurance carrier underwriting professional liability for a group of professional medical care providers would have exercised under the same or similar circumstances, in the following regards:  Defendant's acts constitute separate and distinct knowingly deceptive, unfair and unconscionable acts, in violation of § 17.46 of the Texas Business and Commerce Code and §§ 541.001 et seq. of the Texas Insurance Code, which were each and all a producing cause of damages sustained by

-15-

Exhibit A-025

Plaintiffs.  Defendant's conduct was heedless and reckless, demonstrating a conscious disregard for the welfare of Plaintiffs.

Defendant's actions, in secretly trying to dump the property on the grantees, amounts to a cancellation of the policy benefits, and Defendant's mishandling of the claim constitutes an unreasonable delay in paying the claim.  Furthermore, Defendant only commenced any action after three years after Plaintiffs retained an attorney, who wrote a letter inquiring as to the status of the claim.

Texas recognizes a common-law duty of good faith and fair dealing in insurance relationships arising out of the parties' unequal bargaining power and the nature of insurance contracts. *See Rice v. Metropolitan Life Ins. Co.*, 324 S.W.3d 660 (Tex. App.—Fort Worth 2010); *Arnold v. National County Mut.. Fire Ins. Co.*, 725 S.W.2d 165 (Tex. 1987) (holding modified by, *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826 (Tex. 1990)).

A cause of action for breach of the duty of good faith and fair dealing is established when, as here, an insurer has no reasonable basis for denying or delaying payment of a claim, and the insurer knew or should have known that fact. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997); *Perrotta v. Farmers Ins. Exchange*, 47 S.W.3d 569 (Tex. App.—Houston [1st Dist.] 2001).  An insurance company also may breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42 (Tex. 1998); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997).  Defendant violated all of these duties.

Defendant breached its duty to deal fairly and in good faith with Plaintiffs in the processing of its claim by refusing to properly investigate and denying necessary the benefits.

-16-

**Exhibit A-026**

Defendant knew or should have known that there was no reasonable basis for denying with respect to Plaintiffs' claim.

Defendant's conduct as outlined above violated § 17.46(b) of the Texas Business and Commerce Code by;  causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of its services; representing that its services were of a particular standard, quality, grade, style, or model, when, in fact, they were of another; representing that an agreement conferred or involved rights, remedies, or obligations which it did not have; failing to disclose information concerning Policy which was known to Defendant at the time of the transaction with the intent to induce Plaintiffs into a transaction into which Plaintiffs would not have entered had the information been disclosed.  Plaintiffs relied to their detriment upon the foregoing representations made by Defendant, resulting in actual damages as outlined below. Plaintiffs are entitled and now sue to recover these damages pursuant to Chapter 541 of the Texas Insurance Code.

Defendants violated the Insurance Code and Deceptive Trade Practices Act by making an untrue statement of material fact; failing to state a material fact that is necessary to make other statements made not misleading under the circumstances; making a statement so as to mislead a reasonably prudent person to a false conclusion of a material fact; making a material misstatement of law; failing to disclose any matter required by law to be disclosed.  *See* §541.061.  Defendant also misrepresented to Plaintiffs material facts or policy provisions relating to coverage at issue. TEX. INS. CODE § 41.060(a)(1); *Id.* § 542.003(b)(1).

Defendant also violated the acts by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear. *Id.* § 541.060(a)(2)(A); § 542.003(b)(4); failing to attempt in good faith to

Exhibit A-027

effectuate a prompt, fair and equitable settlement under one portion of a policy where liability has become reasonably clear, in order to influence settlement of a claim under another policy or portion of the same policy. *Id.* § 541.060(a)(2)(B); failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or for an offer of a compromise settlement of a claim. *Id.* § 541.060(a)(3); failing within a reasonable time to affirm or deny coverage or submit a reservation of rights to a policyholder. *Id.* § 541.060(a)(4); undertaking to enforce a full and final release of a claim from a policyholder in certain circumstances when only a partial payment has been made. *Id.* § 541.060(a)(6); refusing to pay a claim without conducting a reasonable investigation with respect to the claim. *Id.* § 541.060(a)(7); Misrepresenting the terms of any policy or any benefits offered thereunder. *Id.* § 541.051(1).

Defendant engaged in the foregoing conduct with an actual awareness of the falsity, unfairness and deceptiveness of its acts and omissions. Accordingly, Defendant is deemed to have violated Chapter 541 "knowingly," as that term is used in §§ 541.002(1) and 541.152(b).

Defendant's misconduct is malicious, intentional, fraudulent, or grossly negligent conduct, as evidenced by the very face of the relevant documents. Plaintiffs made Defendant actually aware that its actions would probably result in extraordinary harm not ordinarily associated with breach of contract or bad-faith denial of a claim. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10 (Tex. 1994). In addition to actual damages, Plaintiffs have suffered extra-contractual damages in the form of mental anguish and exemplary damages, recoverable for a breach of the duty of good faith and fair dealing. *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663 (Tex. 1995).

-18-

## CLAIM FOUR - TORTIOUS INTEREFERENCE WITH A CONTRACT
## AND PROSPECTIVE BUSINESS RELATIONS

Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs.

Pleading additionally, or in the alternative, to recover for tortious interference with an existing contract, Plaintiffs had existing Loan Servicing Agreements and Loan Documents constituting valid contracts subject to interference; (2) Defendant committed willful and intentional acts of interference, including causing the conveyance to various grantees of the Property, all of whom Steadfast has Loan Servicing Agreements with and duties to, which created involuntary adverse interests between various parties to the Agreements whose interests were otherwise aligned; (3) these acts and others were the proximate cause of the Plaintiffs' damages; and (4) that actual damage or loss occurred. *Holloway v. Skinner*, 898 S.W.2d 793, 795–96 (Tex.1995); *Juliette Fowler Homes*, 793 S.W.2d at 664; *Armendariz v. Mora*, 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n.r.e.).

In the instant case, Defendant willfully and intentionally interfered with valid Loan Service Agreements, deeds of trust, promissory notes, and guaranty agreements and other Loan Documents, which was the proximate cause of Plaintiffs' actual damages and loss.

## CLAIM FIVE - |TRESPASS TO TRY TITLE AND QUIET TITLE

Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs. Pleading additionally, or in the alternative, Plaintiffs would show that they did not accept any grant of title, were awaiting information by which to evaluate such a potential grant, and that Plaintiffs only, and not any other grantee, would have any right, title or interest in the Property. Until such acceptance, the Property remains in the Grantor, and no valid conveyance was made.

-19-

Exhibit A-029

## CLAIM SIX- PROMISSORY ESTOPPEL

Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs. Pleading additionally, or in the alternative, Plaintiffs would show that the Defendant made promises to Plaintiffs, that the Plaintiffs reasonably and substantially relied on to their detriment, that Plaintiffs' reliance was foreseeable by the Defendant and that injustice can be avoided only by enforcing Defendant's promises.

## CLAIM SEVEN - NEGLIGENT MISREPRESENTATION

Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs.

Pleading additionally, or in the alternative, Defendant made representations to Plaintiffs in the course of Defendant's business of insuring real estate and/or in the transaction relating to the Property and Policy; (2) Defendant provided false information for the guidance of Plaintiffs; (3) Defendant failed to exercise reasonable care or competence in obtaining or communicating the information; (4) Plaintiffs justifiably relied on Defendant's representation; and (5) Defendant's negligent misrepresentation proximately caused the Plaintiffs' damages.

## CLAIM EIGHT - FRAUDULENT TRANSFER

Plaintiffs re-allege and by reference incorporate all allegations into all allegations in this Pleading for all purposes. Pleading additionally, or in the alternative, Plaintiffs would show, unbeknownst to Plaintiffs, Defendant caused conveyance of the Property in an effort to defraud, delay, and hinder Plaintiffs from recovery of their proper title and benefits under the Agreements. Such transfer was made to hinder Plaintiffs from recovering their full recovery and in order to wrongfully avoid Defendant's obligations; the transfer was concealed, Defendant obligated itself to properly conduct a lawsuit, and pay the Indebtedness, and were incurring expenses and risks

Exhibit A-030

associated with such baseless suit, all of which Defendant wished to avoid by way of the transfer; the value of the conveyance was not reasonably equivalent to the obligation Defendant was attempting to avoid. "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. TEX. BUS. & COMM. CODE § 24.002(12).

The property is of unknown value in its dilapidated state caused by Defendant, but certainly not worth near the Indebtedness owed under the Policy, nor the damages incurred by Plaintiffs.

## IX.
## DECLARATORY JUDGMENT

Plaintiffs re-allege and by reference incorporate all allegations in the preceding paragraphs, and request Declaratory Judgment.

A proceeding for Declaratory Judgment is an additional remedy available to a party, and does not replace any existing alternate remedy. *Cobb v. Harrington*, 190 S.W.2d 709 (Tex. 1945). Declaratory Judgment is meant to be an efficient method of determining the rights of the parties after a controversy has arisen, whether or not a wrong has actually been committed. *Id* at 713. Under the Declaratory Judgments Act, the court has the power to declare the rights and the status of the parties. TEX. CIV. PRAC. & REM. CODE *§ 37.001 et seq.* The court has this power whether or not further relief is claimed, or could be claimed, by the moving party. TEX. CIV. PRAC. & REM. CODE § 37.003(a); *see § 45.03.* The Declaratory Judgment Act is, in effect, a procedural device for the determination of cases and controversies that are already within the court's jurisdiction. *Juliff Gardens v. Texas Comm'n on Environmental Quality, 131 S. W.3d 271* (Tex. App.—Austin 2004, no pet.); *Strayhorn v. Raytheon E-Sys., Inc., 101 S. W.3d 558* (Tex. App.—Austin 2003, pet. denied). A Court may refuse to issue a Declaratory Judgment, but only if the judgment

-21-

Exhibit A-031

would not resolve the uncertainty at the root of the controversy. *See James v. Hitchcock Independent School Dist*, 742 S.W.2d 701 (Tex. App.—Houston [1st Dist.] 1987, writ denied). If a Declaratory Judgment would resolve the uncertainty, then the Court has the duty to issue such a judgment declaring the rights of the parties. *See Continental Oil Company v. P.P.G. Industries*, 504 S.W.2d 616 (Tex. Civ. App.—Houston [1st Dist.] 1973). Plaintiffs therefore, request that declaratory judgment be entered as set forth in the Summary Judgment Motion previously on file, and as follows:

A. The Wrongful Deed is void on its face for lack of a Grantee and other facial defects, and lack of consent by the Grantees.

B. Defendant owes Plaintiffs all costs, attorney's fees, principal, interest.

C. Defendant's handling of the claim was not reasonably diligent, and its obligations to Plaintiffs are not terminated or otherwise limited as a result of Section 7(b) or otherwise.

D. Defendant's obligation under Section 7 expressly continues, requiring Defendant to nonetheless make the payments required to be made, which "payments required to be made" include the requirement to pay the actual monetary loss or damage, under Section 8, up to at least the amount of the Indebtedness ($832,000.00 to date and counting) or the limits ($1,000,000.00).

E. Defendant's liability under the Policy is no longer limited to Policy Limits.

F. Plaintiffs' requests for information were reasonable and actions satisfied all obligations, of cooperation or otherwise, under the Policy.

G. Defendant's actions constitute authorization of fees and expenses of Plaintiffs to date.

H. Defendant's illegal and wrongful conduct with respect to the Wrongful Deed and settlement are outside the scope of the Policy and do not arise out of the status of the title or lien of the insured mortgage or any action asserting such claim.

I. Defendant is required to issue a title commitment in the amount of the Indebtedness prior to Plaintiffs taking title.

Exhibit A-032

Pursuant to Rule 37.009 of the Texas Civil Practices and Remedies Code, the Court may award costs and reasonable and necessary attorney's fees as are equitable and just. Plaintiffs request judgment against Defendant for Plaintiffs' reasonable and necessary attorney's fees, expenses and costs of court incurred in this action.

## X.
## REQUEST FOR DISCLOSURE

Plaintiffs request that Defendant disclose the material in Rule 194 of the Texas Rules of Civil Procedure within fifty (50) days of receipt of this Application for Temporary Restraining Order, Temporary and Permanent Injunction.

## XI.
## JURY DEMAND

Plaintiffs demand trial by jury and tenders the appropriate fee with this Petition.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Court enter judgment in their favor and against Defendant and have judgment of and against Defendant for the following relief:

1. Declaratory Judgment as set forth herein;

2. All actual, special, lost profits, and consequential damages of Plaintiffs proven and supported by the Pleadings;

3. Punitive, statutory and exemplary damages against Defendant proven and supported by the Pleadings, reasonably related to Plaintiffs' actual damages, and sufficient to deter such egregious conduct on the part of Defendant and other similarly situated in the future; Defendant is not entitled to any statutory cap due to criminal conduct under Chapter 41, CPRC.

-23-

Exhibit A-033

4.  Damages in accordance with § 17.50(b)(1) of the Texas Business and Commerce Code and § 541.152 of the Texas Insurance Code and as otherwise set forth herein.

5.  Prejudgment and post judgment interest as provided by law;

6.  Attorney's fees as allowed for and set forth above, and as allowed by 37, 38. And 27.01 CPRC, Texas Business and Commerce Code and § 541.152, or otherwise allowed by law; Costs of suit;

7.  Temporary and Permanent Injunction as set forth herein;

9.  Such other and further relief at law or in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

THE RAMEY LEGAL GROUP, PLLC

By: _____
   Christopher B. Ramey
   SBN: 00791480
   215 S. 4th Street,
   Wallis, Texas 77485
   1602 Hamblen St
   Houston, Texas 77009
   (713) 974-1333 - Telephone
   (713) 974-5333 – Facsimile
   Ramey@rameylegal.com
   Notice@rameylegal.com
   **E-SERVICE WITHOUT COPYING
   NOTICE@RAMEYLEGAL.COM is not
   accepted nor is it effective notice or service
   under the Rules**

   COUNSEL FOR PLAINTIFFS

Exhibit A-034